**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | | |
|---|---|---|
| MICHELLE ANDEXLER, | ) | |
| | ) | No. 03:10-cv-01019-HU |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | **ON DEFENDANT'S MOTION** |
| MICHAEL T. CLARKE, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | |

_____

Joshua R. Trigsted
TRIGSTED LAW GROUP, P.C.
5200 S.W. Meadows Road
Suite 150
Lake Oswego, OR 97035

    Attorney for Plaintiff


David A. Jacobs
LUVAAS COBB RICHARDS & FRASER, P.C.
777 High Street
Suite 300
Eugene, OR 97401

    Attorney for Defendant

1 - 10-1019 MEMORANDUM OPINION AND ORDER

HUBEL, Magistrate Judge:

The plaintiff Michelle Andexler brings this action against the defendant Michael T. Clarke for damages under the federal Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 et seq.[1] In her Complaint, Andexler alleges Clarke attempted to collect a judgment obtained against her by Fred Butcher. The judgment was obtained by default. Andexler claims a portion of the judgment represented a "lease buyout fee" that Butcher "was not allowed to charge" and was an "unlawful penalty." She claims Clarke chose to pursue collection of the entire judgment amount, even though he "could have refused to collect the unlawful portion," violating 15 U.S.C. § 1692f(1).[2]

Andexler further claims Clarke filed a writ of garnishment against her, and then failed to provide her with proper notice of her right to object to the garnishment as required by Oregon Revised Statutes § 18.845. Instead, Clarke provided a form of notice "apparently designed for debtors who owe tax debts." Dkt. #1, ¶¶ 10 & 11, & Ex. A. Andexler seeks actual and statutory damages and attorney's fees under the FDCPA. Dkt. #1.

The matter is before the court on Clarke's motion for summary judgment. Dkt. #19. The motion is supported by a brief, Dkt. #20; a statement of facts, Dkt. #21; and Declarations of Michael T. Clarke, Erin A. Fennerty, and Scott Mollenhour, Dkt. ## 22, 23 and

---

[1] The parties have consented to jurisdiction and the entry of final judgment by a United States Magistrate Judge, in accordance with Federal Rule of Civil Procedure 73(b). Dkt. #27.

[2] A debt collector violates the FDCPA by collecting any amount that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.§ 1692f(1).

2 - 10-1019 MEMORANDUM OPINION AND ORDER

24, respectively. Andexler has responded with a brief, Dkt. #31, accompanied by a copy of the Writ of Garnishment obtained against her on Butcher's behalf. Dkt. #31 & 31-1. Clarke has filed a reply, Dkt. #34; a Declaration of David A. Jacobs, Dkt. #35; and a Supplemental Declaration of Michael T. Clarke, Dkt. #36. The motion came on for oral argument on June 15, 2011. The court has considered the parties' summary judgment papers and counsels' oral arguments, and **grants** the motion for summary judgment.

### *DISCUSSION*

Clarke's motion and Adexler's response bring a single issue before the court; i.e., whether Clarke qualifies as a "debt collector" for purposes of the FDCPA. The parties do not dispute that the judgment Clarke attempted to collect constituted a "debt" for purposes of the FDCPA (although Andexler disputes the validity of a portion of the debt). The Act defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due another.

15 U.S.C. § 1692a(6).

"[L]awyers who regularly collect debts through litigation" are included within the statutory definition of "debt collector." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (citing *Heintz v. Jenkins*, 514 U.S. 291, 293-94, 115 S. Ct. 1489, 1490, 11 L. Ed. 2d 395 (1995); *see id.*, 514 U.S. at 299, 115 S. Ct. at 1493 (FDCPA "applies to attorneys who

3 - 10-1019 MEMORANDUM OPINION AND ORDER

'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.").

Clarke, however, argues he does not qualify as a "debt collector" as defined by the statute because at the time of the alleged violation, he had been practicing law for less than five years during which time he had handled only ten consumer debt collections for nine different clients, five of whom were his family members or friends. He claims he "has no ongoing relationships with clients that have retained him specifically to handle consumer debt collections," and he only occasionally handles debt collection matters as part of his small, generalized law practice. Dkt. #20; *see* Dkt. #22, Clarke Declr.

Clearly, the principal purpose of Clarke's business is not the collection of debts. Thus, the question turns on whether Andexler can show Clarke "regularly collects or attempts to collect" consumer debts. *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60-61 (2d Cir. 2004) (FDCPA plaintiff "bears the burden of proving the defendant's debt collector status").

Andexler complains that she "had no direct access to [Clarke's] files and therefore has no opportunity to meaningfully challenge the evidence provided by [Clarke] regarding the amount of [his] practice devoted to collection activity." Dkt. #31, p. 1. Clarke takes issue with Andexler's representation. He notes that early on in the case, "with the court's encouragement, the parties resolved a dispute over what information would be provided to [Andexler] from [Clarke's] client files in such a way [as] to protect attorney-client confidences." Dkt. #34, p. 1; *see* Dkt.

4 - 10-1019 MEMORANDUM OPINION AND ORDER

#35, Declr. of David A. Jacobs (describing discussions with the court at the parties' Rule 16 conference and subsequent status conference). Pursuant to the parties' agreement, attorney Erin A. Fennerty conducted a comprehensive review of Clarke's client files and email correspondence, and prepared a listing of the types of work he had performed for each of his clients for calendar years 2006 through 2010. *See* Dkt. #23, Fennerty Declr. This information was provided to Andexler, who then deposed Clarke. According to Clarke, Andexler did not have his deposition transcribed; she pursued no further discovery subsequent to his deposition; and, to Clarke's knowledge, she did not depose, or subpoena documents from, any of the clients for whom he has performed consumer collection work. Dkt. #34.

Andexler "challenge[s] the accuracy, or at least the materiality, of [Clarke's] representation that he does not currently represent any of the clients for which he has done collection work on an ongoing basis." Dkt. #31, p. 1 (citing Dkt. #21, ¶ 3). She argues Fennerty's file review suggests Clarke performed ongoing collection activities for at least three clients; i.e., Modern Appraisal, "Northwest Plumbing," and Vilardi Electric. *Id.* (referring to Dkt. #23, ¶ 9(i), (q), & (s)). Andexler suggests it is immaterial whether or not Clarke still represented any of those three clients at the time of his Declaration; rather, "[w]hat would be material is information regarding the nature of [Clarke's] arrangement with those parties as of the date that [he] performed the collection actions that are the subject of this lawsuit." *Id.*

Concerning the three clients cited by Andexler, Fennerty's review of Clarke's records shows he pursued three matters on behalf

5 - 10-1019 MEMORANDUM OPINION AND ORDER

of Vilardi Electric. One clearly was not a consumer matter, as it involved a contract between Vilardi and another business. The other two matters were to collect payment due under contracts for the performance of residential electrical work. In one of those, no lawsuit was filed. In the other, a lawsuit was filed for breach of contract. *See* Dkt. #23, ¶ 9(i).

For Modern Appraisal, Clarke undertook seven collection matters, only one of which involved a consumer defendant. Five of the matters involved collections from mortgage companies for the performance of home appraisals. The last action also involved a commercial client, not a consumer. *Id.*, ¶ 9(q).

For SRDH Plumbing, Inc. *dba* Northwest Plumbing, Clarke undertook two consumer collection actions to recover payment due under contracts for the performance of plumbing services. *Id.*, ¶ 9(s).

In Clarke's supplemental declaration, he makes it clear that throughout his legal career, he has never had any ongoing relationship with any client to handle consumer collection work, nor has any client ever agreed to send him collection work "whenever they had the need." Dkt. #36, ¶ 1.

The question here is whether Clarke's debt collection activities are sufficient to satisfy the regularity prong of the definition of "debt collector." The Ninth Circuit has only addressed the issue once. In *Fox v. Citicorp Credit Services, Inc.*, the court held, with little analysis, that an attorney whose practice during the period in question included 80 percent debt collection work was a "debt collector" for purposes of the Act. *Id.*, 15 F.3d 1507, 1513 (9th Cir. 1994).

6 - 10-1019 MEMORANDUM OPINION AND ORDER

More instructive on the issue is the court's analysis in *Goldstein*. There, the court reviewed the issue thoroughly, and found that in determining whether an attorney qualifies as a "debt collector" for purposes of the FDCPA, the court's focus cannot be limited to "the proportion of overall work or firm revenue," a narrow view that "blurs the distinction between the 'principal purpose' and 'regularity' aspects of the statutory definition of debt collector." *Goldstein*, 374 F.3d at 61. The court observed as follows:

> To the extent that some courts confronted with the task of articulating an analytical framework for the regularity prong of the definition have suggested that such proportionality factors may alone be determinative, the facts of the particular cases often belie the implication. Where debt collector status was found lacking based on revenue or workload figures, other indicia of regularity often were also lacking; where debt collector status was found, the regularity and/or principal purpose criteria would in some cases easily have been met in any event. *Compare Schroyer v. Frankel,* 197 F.3d 1170, 1173, 1177 (6th Cir. 1999) (where firm handled 50-75 collection cases annually, constituting less than 2% of overall practice, maintained no non-attorney staff or computer aids for debt collection, and debt collection activity came from non-collection business clients and was "incidental to, and not relied upon or anticipated in," firm's practice of law, firm was not debt collector); *White [v. Simonson & Cohen P.C.],* 23 F. Supp. 2d [273,] 278 [(E.D.N.Y. 1998)] (lawyer who sent 35 collection letters once as favor to personal client and filed no follow-up litigation was not debt collector); *Von Schmidt v. Kratter,* 9 F. Supp. 2d 100, 103-04 (D. Conn. 1997) (law firm whose total three-year revenues from debt collection were less than $1,000 and had only one consumer credit client was not debt collector); *and Nance v. Petty, Livingston, Dawson, & Devening,* 881 F. Supp. 223, 225 (W.D. Va. 1994) (collection work that constituted .61% of lawyer's personal practice and represented 1.07% of firm's cases over 18-

>       month period did not render defendant law firm debt collector, where plaintiff provided no evidence of debt collection activity other than that complained of in action); *with Scott v. Jones,* 964 F.2d 314, 316-18 (4th Cir. 1992) (principal purpose and regularity prongs satisfied where lawyer and firm had regular ongoing relationship with delinquent debt division of credit card issuer, 70-80% of revenues were generated by such work over relevant period and over 4,000 "warrants" had been issued annually in connection with such work over five-year period). *See also Garrett [v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997)]*,* (rejecting district court finding that collection activity was not "regular" where 639 demand letters were mailed in nine-month period, although revenues from activity were less than 0.5% of firm's total for period). In light of Goldstein's proffer of specific evidence of debt collection activity in the form of 145 three-day notices issued in a one-year period, the district court's analysis was too narrow to support its determination that Hutton had not regularly engaged in debt collection.

*Goldstein*, 374 F.3d at 61-62.

The court rejected Goldstein's assertion that if any attorney engages in collection activities for clients "more than a handful of times per year," the attorney must comply with the FDCPA. *Id.*, 374 F.3d at 62 (citation omitted). The court found, "Goldstein's 'handful' standard has no precedential basis and, standing alone, lacks a meaningful nexus to the issue of regularity." *Id.* Instead, the court held the determination must be made "on a case-by-case basis in light of factors bearing on the issue of regularity." *Id.* The court found the following factors to be "illustrative rather than exclusive":

>       Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related

8 - 10-1019 MEMORANDUM OPINION AND ORDER

>litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations. {Footnote omitted.] Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Goldstein*, 374 F.3d at 62-63.

In the present case, Andexler asserts that Clarke "derived .97% of [his] revenue from collection practices," while the defendant in *Goldstein* who was found to be a "debt collector" derived only .05% of its overall revenue from collection activities. Dkt. #31, p. 9. However, the *Goldstein* court's holding was based on more than just the percentage of revenue. The defendant in the case was shown to have issued 145 debt collection notices in a twelve-month period, with more than ten notices issued in each of at least seven months and more than fifteen notices issued in three months. The court found that these numbers, "taken together with the repetitive pattern of issuance of multiple notices each month, clearly could support a determination that [the defendant's] debt

9 - 10-1019 MEMORANDUM OPINION AND ORDER

collection practices were regular." *Id.*, 374 F.3d at 63.  In addition, the record showed the defendant had an ongoing relationship with "apparently affiliated entities for which it repeatedly sent collection notices within the one-year period under scrutiny[.]" *Id.*  The evidence here is not as compelling.  There is no evidence in the record that Clarke engaged in a similar magnitude of collection activities, or that he had an ongoing relationship to collect debts for any particular client.

Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Clarke has shown there is an absence of evidence to support Andexler's case.  Accordingly, the burden shifts to Andexler "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)).  The Ninth Circuit has explained that "[t]his burden is not a light one":

> The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all

>           justifiable inferences are to be drawn in its
>           favor. *Id.* at 255, 106 S. Ct. 2505.

*Id.*

In the present case, a review of the factors identified by the *Goldstein* court leads to the conclusion that Clarke is not a "debt collector" for purposes of the FDCPA. Moreover, Andexler has failed to "make a showing sufficient to support a determination that [Clarke] was a debt collector" at the time he obtained the writ of garnishment on Butcher's behalf. *See Goldstein*, 374 F.3d at 60-61. She has offered no citations to materials in the record that establish Clarke was (or is) a "debt collector," nor has she offered evidence to establish the existence of a material issue of fact. Even taking all justifiable inferences in Andexler's favor, she has failed to "come forth with evidence from which a jury could reasonably render a verdict in [her] favor." *In re Oracle Corp.*, 627 F.3d at 387 (citation omitted). *Cf. Ashcroft v. Iqbal*, 556 U.S. \_\_\_, 129 S. Ct. 1937, 1949 (2009) (noting Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). I find that Clarke was not a "debt collector" for purposes of liability under the FDCPA.

11 - 10-1019 MEMORANDUM OPINION AND ORDER

***CONCLUSION***

For the reasons discussed above, Clarke's motion for summary judgment (Dkt. #19) is **granted.**

IT IS SO ORDERED.

Dated this 20th day of June, 2011.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge